C. W. and Mattie STILWELL, Plaintiffs,

v.

UNITED STATES of America, Defendant.

S. W. and Rosie STILWELL, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 546, 547.

United States District Court
W. D. Virginia,
Abingdon Division.

May 23, 1957.

**112**

John Y. Merrell, Washington, D. C., Francis W. Flannagan and Homer A. Jones, Jr., Bristol, Va., for plaintiff.

John Strickler, U. S. Atty., Roanoke, ·Va., and Deane E. McCormick, Atty., Tax Division, Dept. of Justice, Washington, D. C., for the Government.

BARKSDALE, District Judge.

These actions having been tried upon the facts, without a jury, the court hereby finds the facts specially as hereinafter set forth and states separately its conclusions of law thereon, as follows:

Findings of Fact.

1. Both C. W. and Mattie Stilwell, husband and wife, and S. W. and Rosie Stilwell, husband and wife, filed joint federal individual income tax returns for the year 1952 and paid the taxes shown thereon to be due.

2. C. W. and S. W. Stilwell are equal partners in a partnership which has been engaged for many years in the mining of coal in Buchanan County, Virginia, under the trade name of Bear Ridge Coal Company. The federal partnership income tax return for 1952 was duly filed. The partnership return did not claim a deduction for depletion. C. W. and S. W. Stilwell are hereinafter referred to as plaintiffs.

3. Plaintiffs filed timely claims for refund for the year 1952 on March 15, 1956, with the District Director of Internal Revenue for Virginia. The claims for refund alleged (1) that the estimated life of mining equipment was set up at an excessive useful life and (2) percentage depletion was not claimed.

4. On December 6, 1956, plaintiffs instituted their respective actions which have been consolidated.

5. The Government's answers denied that the plaintiffs were entitled to the relief sought and alleged as its affirmative defense that the court was without jurisdiction on the ground that the claims for refund did not set forth facts sufficient to apprize the Commissioner of Internal Revenue of the exact basis of the claims.

6. In open court, plaintiffs, by counsel, withdrew their claims for refund arising out of their alleged inadequate claims for depreciation of mining equipment and did not present evidence on this issue.

7. Regarding the Government's affirmative defense, the letters of transmittal with each claim stated:

"I am enclosing herewith Form 843 for calendar year 1952. This claim is based upon information on file in the office of R. L. Persinger & Company, Certified Public Accountants, Richlands, Va.

"I would appreciate it if your examining agent will call at their office when the claim is checked."

Subsequently Internal Revenue Agent Chocklett called at the office of Mr. Persinger, discussed the claims with him, acquired all the information in regard to the claims which he deemed necessary, and advised the plaintiffs and Mr. Persinger that he was recommending disallowance of their depletion claims, and did so recommend to his superior.

8. Under these circumstances the Commissioner was fully apprized of the factors relied upon by plaintiffs and was not prejudiced to any extent, but was fully advised of the exact factual basis of plaintiffs' contention. The Commissioner considered the claims on their merits. Strict compliance with the statutes and regulations in regard to filing of claims for refund was waived by the Commissioner.

9. Coming now to the plaintiffs' principal claim that they are entitled to percentage depletion, I find that Paragon-Jewel Coal Company, Inc., hereinafter referred to as Paragon, leased from the owners all of the coal land here under consideration. The plaintiffs acquired no title or interest therein from the owners.

10. Under the leases Paragon was obligated to pay annual minimum royalties, tonnage royalty, wheelage, land taxes and extraction taxes.

11. After acquiring these coal leases Paragon made very substantial investments necessary for mining, processing and marketing the coal underlying the leased boundaries, including construction and maintenance of roads, railroad sidetrackage, and tipple with processing equipment. Plaintiffs' only investment was in mine machinery and mining equipment, which were readily movable from place to place, a short access road from Paragon's road to the mine opening, and costs of opening and operating the mine.

12. Plaintiffs entered into a verbal contract with Paragon to deep mine and deliver coal underlying Paragon's leased boundaries at a specific price per ton. At the time of entering into the contract for mining the coal the plaintiffs had no thought that they were entitled to a percentage depletion deduction and gave no consideration to it in arriving at their arrangement with Paragon to mine coal at the agreed price per ton. On the other hand, Paragon did assume that it was entitled to the depletion deduction and took that into consideration in reaching its agreement with plaintiffs upon the price to be paid them for the coal which they mined and delivered to it.

13. In contracting with Paragon, plaintiffs acquired no legal right to mine any particular quantity of coal, nor did they acquire the right to mine all the coal underlying any particular boundary of land. Plaintiffs' firm was one of several contractors engaged by Paragon to mine the coal underlying its leased coal land.

14. The contract entered into between plaintiffs and Paragon was terminable at the will of either party.

15. Under the terms of this contract plaintiffs were required to deliver all of the coal mined by them to Paragon.

16. Plaintiffs completed their obligation under the contract by delivering the coal to Paragon's tipple and thereupon became entitled to their compensation for mining the coal by virtue of Paragon's personal covenant to pay for such services at the amount per ton previously agreed upon by the contracting parties. Plaintiffs were not concerned with the sale price Paragon received for the coal.

17. At various times during the operation Paragon notified plaintiffs that it was increasing or decreasing the price per ton it would pay them for their services thereafter. These fluctuations in compensation were the result of sustained changes in the market price of coal and changes in labor costs.

18. The coal as delivered to Paragon's tipple by the plaintiffs was not in a state which was salable to the consumer but had to be cleaned, washed, graded and treated in order to be salable upon the consumer market. All such processing was done by Paragon by means of its processing plant.

### Conclusions of Law.

1. The plaintiffs are not entitled to a refund of taxes paid for the year 1952 on account of having made an inadequate claim for depreciation on mining equipment.

2. The defendant waived strict compliance with the statute and regulations requiring that the claims for refund shall set forth sufficient facts to apprize the Commissioner of Internal Revenue of the exact basis of the claim.

3. As to plaintiffs' principal contention that they are entitled to a share of the percentage depletion deduction permitted under the law, plaintiffs are entitled to prevail if by their transactions with Paragon-Jewel they acquired an economic interest in the mineral, and they are not entitled to prevail if they acquired only an economic advantage. As Judge Soper said in Commissioner of Internal Revenue v. Gregory Run Coal Company, 4 Cir., 212 F.2d 52, 61:

> "* * * it is not always easy to draw the line between a transaction which amounts to a complete sale of the interest of an owner in oil or coal lands and a retention of an economic interest which entitles the owner of an equitable share of the deduction for depletion. Nor is it always easy to draw the line between transactions which constitute one a purchaser of an economic interest as distinguished from one who merely performs the labor of production for a fixed sum and thereby becomes merely the hireling of the producer for a specific purpose."

As pointed out in a number of decisions, amongst them being Weirton Ice & Coal Supply Co. v. Commissioner, 4 Cir., 231 F.2d 531, 534, 535, and Usibelli v. Commissioner, 9 Cir., 229 F.2d 539, 543–545, there are a number of criteria to be considered in determining the question of economic interest. From the facts which I have found, some of the criteria which appear favor the conclusion that plaintiffs did acquire an economic interest here. However, it is my conclusion that more criteria, and the more important criteria, require the conclusion that plaintiffs here, by their contract with Paragon-Jewel, acquired only an economic advantage, and did not acquire an economic interest, in the mineral.

I therefore conclude that plaintiffs are not entitled to the percentage depletion deduction on their gross income derived from their mining operations under Section 23(m) and Section 114(b) (4) of the Internal Revenue Code, 26 U.S.C.A. § 23 (m), as claimed in their complaints.

It follows that an order will be entered dismissing this consolidated action at the costs of the plaintiffs.